## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SHARRON GREENWOOD,

     Plaintiff,

     v.

SPRINT/UNITED MANAGEMENT
COMPANY, INC.,

     Defendant.

Case No.: 1:14-cv-08302

**Honorable Virginia M. Kendall**

---

**PLAINTIFF DEMANDS TRIAL BY JURY**

### FIRST AMENDED COMPLAINT

For the claims against Defendant SPRINT/UNITED MANAGEMENT COMPANY, INC., Plaintiff SHARRON GREENWOOD (hereinafter, "Ms. Greenwood" or "Plaintiff") alleges as follows:

### INTRODUCTION

1. Plaintiff, Sharron Greenwood, brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, *et seq.* ("ADEA"), to redress acts of discrimination by Defendant on account of Plaintiff's race and age, including but not limited to harassment, discrimination, and retaliation.

2. Plaintiff, Sharron Greenwood, an African-American female, alleges that Sprint/United Management Company, Inc. (hereinafter, "Defendant" or "Sprint"), discriminated against her by intentionally creating and maintaining a general pattern, practice, policy and custom of discrimination, unequal conditions of employment, promotion, and compensation based on the fact that Sharron Greenwood is an African American over 40 years of age.

3. Defendant's discriminatory treatment of Plaintiff, an African American employee, is in violation of federal and applicable state civil rights laws. As evidence of Defendant's racial discrimination, Plaintiff alleges the following specific examples of disparate treatment and disparate impact:

      a. Discrimination and disparate treatment in the assignment and maintenance of sales accounts and sales territory assignments;

      b. Discrimination and disparate treatment in compensation and bonuses related to the generation and maintenance of sales accounts and territory assignments;

      c. Discrimination and disparate treatment of Plaintiff directly resulting in the lack of promotions which in turn, resulted in lower pay for Plaintiff than her similarly situated, less experienced and younger White counterparts;

      d. Failure to monitor and properly account for sales revenues and credits, and the failure to pay appropriate bonuses and award promotions based on the same; and,

      e. Discrimination in termination of Plaintiff Sharron Greenwood for failing to meet sales quotas.

4. Plaintiff seeks available equitable relief, damages, attorney's fees, costs, and interest.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*, 29 U.S.C. §621, *et seq.*, 28 U.S.C. § 1331, and 28 U.S.C. § 1334.

6. Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b)(2) and (d), as Plaintiff and Defendant did, and upon information and belief, continue to do business in this district, and the events complained of occurred within the

2

jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division.

## PARTIES

7. Ms. Greenwood is an adult African American female citizen of the State of Illinois and a resident of the City of Chicago, County of Cook. At all material times, Plaintiff has been a resident of the State of Illinois, County of Cook.

8. At all material times, Plaintiff was an employee of Defendant Sprint/United Management Company, Inc. as defined in 29 U.S.C. § 630(f) and 42 U.S.C. § 12111(4).

9. Defendant, Sprint/United Management Company, Inc., is a foreign corporation with a principal place of business at 6200 Sprint Pkwy., Overland Park, Kansas 66251.

10. Upon information and belief, at all material times, Defendant has employed 15 or more employees and has been an employer within the meaning of Title VII and the ADEA.

## ADMININSTRATIVE PREREQUISITES

11. On or about June 27, 2014, Plaintiff filed a Charge of Discrimination based upon violations of the ADEA and Title VII, with the Equal Employment Opportunity Commission ("EEOC") [EEOC Charge No.: 440-2014-04623] ("EEOC Charge"). Plaintiff filed such claims in a timely manner. (Attached as **Exhibit A** is a copy of Plaintiff's EEOC Charge which is incorporated herein by reference for all purposes as if fully set forth verbatim.)

12. On July 22, 2014, the EEOC issued its "Dismissal and Notice of Rights" based upon the EEOC Charge. (A copy of the July 22, 2014, "Notice of Rights" is attached as **Exhibit B** which is incorporated herein by reference for all purposes as if fully set forth verbatim.)

13. On October 22, 2014, Plaintiff filed a Complaint in this court. On November 19, 2014, the Court dismissed Plaintiff's Complaint. However, on April 15, 2015, the Court found that

3

Plaintiff received her "right to sue letter" on June 25, 2014. (A copy of the Court's April 15, 2015, Order is attached as **Exhibit C** which is incorporated herein by reference for all purposes as if fully set for verbatim.) On April 15, 2015, the Court reinstated the present case, granted Plaintiff's motion to proceed *in forma pauperis*, and dismissed Plaintiff's Complaint without prejudice with leave to refile after the appointment of counsel. (See **Exhibit C**)

14. Plaintiff has thus fully and timely exhausted all of her administrative remedies pursuant to the law and this suit is brought timely within the applicable statutes of limitation.

### FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

15. The allegations set forth in Paragraphs 1-14 are re-alleged and incorporated by reference as though fully set forth at length herein.

16. Plaintiff is a 54 year-old African American woman who was formerly employed by the Defendant. Plaintiff's area of employment was sales.

17. Initially, Plaintiff was employed by Nextel. She was assigned to a sales territory which encompassed portions of the Northwest Suburbs of Chicago, Illinois.

18. Due to the sales structure in place at the time of employment by Nextel, Plaintiff was required to develop client relationships and service accounts with Nextel products within her territory.

19. Throughout her tenure with Nextel, Plaintiff built the accounts in her territory, becoming a top performing "Account Executive."

20. Subsequently, Nextel was acquired by Sprint Corporation. After the acquisition, Plaintiff remained employed by Defendant with the title "Account Executive I." Due to the sales structure in place at the time of employment by Defendant, Plaintiff was still required to develop client relationships and service accounts with Sprint products within her territory.

4

21. Over the years, through perseverance and hard work, Plaintiff was promoted to "Account Executive II" and transferred to the "Chicago Loop Team." This promotion expanded Plaintiff's sales territory.

22. Plaintiff earned several performance awards including being admitted to the "President's Club," and she was once the number one Sprint Account Executive in the country.

23. One such accomplishment by Plaintiff was securing a two-year account with Groupon, valued at approximately $1,000,000 to Defendant.

24. In or about 2012, Plaintiff experienced a change in management and a new supervisor, Brian Gassmann, an employee of Defendant, was assigned to oversee Plaintiff's sales group. Mr. Gassmann began treating Plaintiff far less favorably than Plaintiff's younger White counterparts.

25. After Mr. Gassmann became Plaintiff's supervisor, Defendant began to reassign some of Plaintiff's sales accounts to her younger White counterparts, taking away multiple accounts of hers since that time. Although Plaintiff spent many years developing and maintaining her sales accounts, those accounts were reassigned to younger White Account Executives who reaped the commissions on sales to the accounts.

26. Specific examples of actions taken by Mr. Gassmann included, but are not limited to:

   a. In 2012, Plaintiff secured a new account, Belly Cards. However, said account was transferred to another Account Executive. Plaintiff approached Mr. Gassmann and inquired as to why the account was transferred. Mr. Gassmann stated that "Sprint wanted someone to work the account who mirrored the companies they called on." Mr. Gassmann followed this comment by stating that

5

Plaintiff "should stay on the Southside of Chicago and deal with local merchants and churches," because she "would do better there."

b. In or about November 2012, Plaintiff discovered another new potential account, HIGI. When Plaintiff presented the account to Mr. Gassmann, he told Plaintiff that she could not pursue the account, and that if she did not like his decision, she should call Human Resources. Plaintiff subsequently approached Gayle Wyman, Director of Sales, and asked why she could not pursue the HIGI account. Ms. Wyman responded with, "Sharron, people are jealous of you and I cannot allow you to get another account that will be a win like Groupon." The HIGI account was then instead given to another younger White Account Executive.

c. After the incident in November 2012, Mr. Gassmann began assigning the most lucrative accounts to subordinate younger White Account Executives.

27. The lucrative sales accounts continued to be assigned to Plaintiff's younger White counterparts. As a result, Plaintiff has had fewer and less lucrative accounts than those assigned to her younger White counterparts, and she was sometimes unable to meet her sales goals.

28. Plaintiff's ability to continue to meet or exceed her sales goals was impeded by Defendant's failure to provide Plaintiff with business opportunities comparable to those of her younger White counterparts.

29. During this same time period, Plaintiff was also denied a promotion. The position was not posted. Instead, the position was filled through an informal process by a less qualified, underperforming younger White male, George Korkois. Upon information and belief, Mr. Korkois was an Account Executive I, subordinate to an Account Executive II, and made his sales quota only once prior to his promotion.

6

30. Further during this time period, Defendant acquired accounts associated with the brand, U.S. Cellular. Due to the acquisition, the accounts were assigned among Defendant's employees, particularly employees under the supervision of Mr. Gassmann. Through another informal process, a less qualified, younger White male on Plaintiff's sales team was assigned the U.S. Cellular accounts, instead of Plaintiff.

31. Plaintiff performed her job duties satisfactorily. She received favorable evaluations, and often received positive recognition from superiors.

32. On December 4, 2013, Plaintiff was terminated from her employment with Defendant. The stated reason for Plaintiff's termination was a failure to make her sales quota on a three-month roll. However, younger White male counterparts of Plaintiff failed to meet their sales quotas but they were not terminated.

33. On December 13, 2013, Plaintiff submitted an appeal of her termination to Defendant's Human Resources Department. Plaintiff's appeal of termination was denied with no stated reason for the denial.

34. Defendant's discriminatory actions caused Plaintiff lost wages, lost benefits, emotional distress and mental anguish.

## COUNT I - TITLE VII RACE DISCRIMINATION

35. The allegations set forth in Paragraphs 1-34 are re-alleged and incorporated herein by reference as though fully set forth at length herein.

36. The aforementioned conditions, patterns and practices of Defendant were racially motivated and constitute discrimination against Plaintiff in violation of Title VII.

37. Defendant repeatedly treated Plaintiff differently than similarly situated individuals who did not belong to Plaintiff's protected class.

7

38. The aforementioned racial discrimination and intentional disparate treatment of Plaintiff by Defendant in the assignment and maintenance of sales accounts and sales territory assignments, directly resulted in Plaintiff not being able to make her sales quotas, and such failure was then improperly used as a basis for her termination in violation of Title VII.

39. The aforementioned conduct of Defendant has resulted in damages to Plaintiff including, but not limited to, loss of pay, loss of benefits, damage to reputation and career, inconvenience, future pecuniary losses, emotional anguish, humiliation, embarrassment, and pain and suffering.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendant engaged in discriminatory conduct against Plaintiff, and enter a judgment in favor of Plaintiff, making the following findings and granting the following relief:

A. That this Honorable Court find that Defendant discriminated against Plaintiff on the basis of her race;

B. That this Honorable Court award Plaintiff money damages reasonably calculated to compensate her lost wages, and for all monetary damages sustained as a result of the discrimination by Defendant;

C. That this Honorable Court award compensatory damages;

D. That this Honorable Court award pre-judgment interest and costs;

E. That this Honorable Court award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and,

F. That this Honorable Court award such other relief as it may deem just and equitable.

## COUNT II – AGE DISCRIMINATION IN EMPLOYMENT ACT

40. The allegations set forth in Paragraphs 1-39 are re-alleged and incorporated by reference as though fully set forth at length herein.

8

41. At all material times, Plaintiff was over 40 years of age, and an employee of Defendant as defined by the ADEA.

42. Plaintiff performed her job duties satisfactorily. She received favorable evaluations, and often received positive recognition from superiors.

43. Plaintiff's age did not affect her ability to perform the job duties of her position with Defendant.

44. Defendant violated Plaintiff's rights under the ADEA, including its anti-retaliation provision(s), which prohibit employers from taking retaliatory actions against employees who complain about discriminatory treatment.

45. Defendant willfully and intentionally discriminated against and/or retaliated against Plaintiff in violation of the ADEA.

46. The aforementioned discrimination, intentional disparate treatment, and retaliation against Plaintiff by Defendant in the assignment and maintenance of sales accounts and sales territory assignments, directly resulted in Plaintiff not being able to make her sales quotas, and such failure was then improperly used as a basis for her termination in violation of the ADEA.

47. The aforementioned conduct of Defendant has resulted in damages to Plaintiff including, but not limited to, loss of pay, loss of benefits, damage to reputation and career, inconvenience, future pecuniary losses, emotional anguish, humiliation, embarrassment, and pain and suffering.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that Defendant engaged in discriminatory conduct against Plaintiff, and enter a judgment in favor of Plaintiff, making the following findings and granting the following relief:

A. That this Honorable Court find that Defendant discriminated against Plaintiff on the basis of her age;

9

B. That this Honorable Court award Plaintiff money damages reasonably calculated to compensate for her lost wages, and for all monetary damages sustained as a result of the discrimination by Defendant;

C. That this Honorable Court award compensatory damages;

D. That this Honorable Court award pre-judgment interest and costs;

48. That this Honorable Court award reasonable attorney's fees and costs; and,

49. That this Honorable Court award such other and further relief as it may deem just and equitable.

## DEMAND FOR JURY TRIAL

For the claims against Defendant SPRINT/UNITED MANAGEMENT COMPANY, INC.,

Plaintiff SHARRON GREENWOOD demands a jury trial in this action on all claims so triable.

Respectfully submitted,

CRAY HUBER HORSTMAN HEIL & VanAUSDAL LLC

By:/s/___Stephen W. Heil_____
Attorney for Plaintiff

Stephen W. Heil ARDC #6204266
CRAY HUBER HORSTMAN HEIL & VanAUSDAL LLC
303 West Madison, Suite 2200
Chicago, IL 60606
(312) 332-8450
(312) 332-8451 (Fax)

## CERTIFICATE OF SERVICE

The undersigned certifies pursuant to Fed.R.Civ.P. 5 and L.R. 5.5, that a true and correct copy of the foregoing **First Amended Complaint** was filed on **June 15, 2015**, with the clerk of the court using the CM/ECF system which will send notice to all attorneys of record.

/s/Stephen W. Heil
Stephen W. Heil